AO 106 (Rev 7/87) Affidavit For Search Warrant

## UNITED STATES DISTRICT COURT

____SOUTHERN____ DISTRICT OF ___CALIFORNIA___

**FILED**
2000 APR -3 PM 1: 51
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

In the Matter of the Search of

| | |
|---|---|
| 1) Motorola Boost Cell Phone | 2) Motorola C-116 |
| Model No: H62XAH6RR1AN | Model No: C-116(G8/1.9) |
| FCC No: AZ489FT5822 | CFT No: RTMOC104-447/450 |
| Serial No: 364YEC6YTX | IMEI No: 010725007267164 |

**APPLICATION AND**
**AFFIDAVIT FOR**
**A SEARCH WARRANT**

3) GARMIN GPS 76CS
Model No: 76CS
ID No: 74149430

**CASE NUMBER:**
**08MJ0913-WMC**

'08 MJ 1027

I, <u>Thao V. Luc,</u> being duly sworn depose and say:

I am a <u>Special Agent with the United States Immigration and Customs Enforcement,</u> and have reason to believe that property or premises known as:
     See Attachment "A"
in the Southern District of California there is now concealed a certain person or property, namely,
     See Attachment "B"

which is:    Subject to seizure under Rule 41(b)(1) of the Federal Rules of Criminal Procedure because the property constitutes evidence of the commission of criminal offenses or instrumentalities used in committing criminal offenses. The criminal offenses at issue are violations of: Title 8, United States Code, Section 1324(a)(2)(B)(ii), bringing in illegal aliens for financial gain.

The facts support a finding of Probable Cause are as follows:

     See Affidavit of Thao V. Luc

Continued on the attached sheet and made a part thereof.   <u>X</u> Yes  __ No

Thao V. Luc
Special Agent
United States Immigration and Customs Enforcement
United States Department of Homeland Security

Sworn to before me, and subscribed in my presence

APR 0 3 2008
Date

at   <u>San Diego, California</u>
City and State

ANTHONY J. BATTAGLIA
U.S. MAGISTRATE JUDGE

UNITED STATES MAGISTRATE JUDGE
Signature of Judicial Officer

Name and Title of Judicial Officer

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR SEARCH WARRANT**

I, Special Agent Thao V. Luc, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.       I am a Special Agent with United States Immigration and Customs Enforcement

(ICE), an agency of the United States Department of Homeland Security.  I have been

employed by ICE since May of 2007.  Prior to ICE, I was employed as a United States

Border Patrol Agent since October of 2002. I am a graduate of the Federal Law

Enforcement Training Center.

2.       I am an investigative or law enforcement officer of the United States within the

meaning of 18 U.S.C. § 2510 (7), and I am empowered by law to conduct investigations

for offenses enumerated in Titles 8, 18, 19, 21 and 46 of the United States Code.

3.       I am assigned to the ICE San Diego Marine Task Force (MTF), which is a High

Intensity Drug Trafficking Area (HIDTA) task force charged with investigating criminal

offenses committed by organizations that utilize nautical and aeronautical conveyances in

the facilitation of smuggling ventures into the United States. I am also involved in

investigations related to drug trafficking through and around land ports of entry.

4.       I have received training in the methods, devices, and customs common to

individuals and organizations that illegally import narcotics and illegal aliens and those

who possess and distribute narcotics.

5.       As a Special Agent with ICE, I have received training and obtained experience to

understand that cellular phones are commonly used by narcotics and alien smuggling

organizations in order to communicate amongst themselves. In addition to the cellular

phones, the narcotics and alien smuggling organizations are also using portable electronic

navigation devices or Global Positioning System (GPS) devices to navigate in the open seas and on land. I have been trained to understand that narcotics and alien smuggling organizations utilize cellular phones and GPS devices because they are easy to use and are mobile. Cellular phones are used to expedite information from one person to another. GPS devices are used to navigate to specific locations accurately during the day or night and may contain stored information on smuggling routes.

6.       In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are also experienced in the area of alien smuggling and narcotics smuggling investigations, and they share the following opinions. Because of my personal participation in the investigation and review of reports made by other ICE Special Agents as well as other federal, state and local law enforcement officers, I am familiar with the circumstances of this investigation.

**Items To Be Searched**

7.       I make this affidavit in support of an application for a search warrant to search: (1) a Black Motorola Boost cellular phone- Model No.: H81XAH6RR1AN, FCC No.: AZ489FT5822, and Serial No: 364YEC6YTX,  (2) a Blue Motorola C-116 phone - Model No.:  C-116 (G8/1.9), FCC No.: IHDT56EX1, and IMEI No: 010725007267164; and (3) a GARMIN GPS 76CS Model No.: 76CS, ID No: 74149430. The telephones and GPS device are currently in the possession of U.S. ICE, 185 West F Street, Suite 600, San Diego, California. I request any and all electronically stored information found subsequent to the search of the property described above, including telephone numbers of incoming and outgoing calls stored in the call registry, telephone numbers and corresponding names to those numbers in the cellular phones' contacts list and other

names found within the contacts list, any incoming or outgoing text messages,

photographic images, voicemails, and telephone subscriber information. In addition to the

telephonic information, electronically stored information stored within the Global

Positioning System (GPS) device listed in ATTACHMENT "A", including coordinates,

charts, waypoints, time and date stamps, maps and subscriber information pertaining to

the GARMIN GPS device.

**Facts Stating Probable Cause**

8.      The following facts are based on my personal participation in this investigation

and on written and oral statements received from other law enforcement officers.

I have participated in this investigation as a Special Agent with U.S. Immigration and

Customs Enforcement and have corroborated the following facts.  All times listed herein

are approximated.

9.      On March 22, 2008 at 4:45 a.m., the United Sates Coast Guard encountered a

vessel on the Pacific Ocean approximately two nautical miles south of Point Loma, in

San Diego, California.  After initial contact with the subjects on board the vessel, U.S.

Coast Guard Officers interviewed Efrain CORNEJO-Segura, the operator of the vessel.

CORNEJO stated that he was lost and looking for the "Coronado Islands" in Mexico at

the time of the encounter with Coast Guard.  All subjects appeared to be of Hispanic

decent and were believed to be in the U.S. illegally.  The vessel and the occupants were

taken to the U.S. Coast Guard San Diego Sector Pier.  Coast Guard notified the duty

agent for the San Diego Marine Task Force (MTF) to advise them of the incident.

10.     The United States Coast Guard searched all occupants of the vessels and

discovered two cellular phones  on Efrain CORNEJO-Segura, (1) a Black Motorola

Boost cellular phone- Model No.: H81XAH6RR1AN, FCC No.: AZ489FT5822, and

Serial No: 364YEC6YTX; and (2) a Blue Motorola C-116 phone - Model No.: C-116

(G8/1.9), FCC No.: IHDT56EX1, and IMEI No: 010725007267164. Also discovered

was a Global Positioning System (GPS) electronic navigational device (GARMIN GPS

76CS Model No.: 76CS, ID No: 74149430) found on the helm of the boat along with

navigational charts and maps. All property was seized and turned over to the Marine

Task Force for processing.

11.    Upon arrival at the Coast Guard base, a Customs and Border Protection Marine

Interdiction Agent determined that all subjects were citizens and nationals of Mexico

illegally present in the United States.    All eleven subjects were taken to the Imperial

Beach Border Patrol Station for further processing.   At approximately 1130 hours, all

subjects were entered into ENFORCE to determine any previous immigration and or

criminal histories.   After interviewing all subjects regarding the maritime smuggling

event, only three were held as material witnesses; Eleuterio MEDINA-Sanchez, Maria de

Jesus MEDINA-Sanchez, and Maria GONZALEZ-Figueroa.

12.    On March 22, 2008, at approximately 6:20 p.m., during post-Miranda interview,

CORNEJO stated that he understood his rights and was willing to voluntarily speak

regarding the smuggling event.

13.    CORNEJO gave a videotaped sworn statement regarding his involvement in the

smuggling of ten undocumented Mexican Nationals on the Pacific Ocean. CORNEJO

stated that he had made arrangements with a man by the name of "Roberto" (no known

last name) about taking a group of people on a vessel from Rosarito, Mexico, to an area

near National City, California in the San Diego Bay. CORNEJO said that Roberto

approached him a few months earlier and asked him about taking people north to a pier or dock in San Diego, California.

14.    CORNEJO said that this was his first time smuggling people into the U.S. and that the only reason he was approached was due to his knowledge of the area where the smuggling was going to take place. CORNEJO said that he used to work as a tuna fisherman for a U.S. company in San Diego, and is a vessel operator for sport fishing tourists in Rosarito, Mexico.

15.    CORNEJO knew that the people were citizens of Mexico attempting to enter the United States illegally through the open sea. Even though he stated that this was his only time committing this illegal act, he tried to justify it by saying that he was in need of money and feared loosing his home. CORNEJO said that it was not until he was being interviewed that he realized the danger he was putting himself and the other occupants of the vessel in. CORNEJO acknowledged that there were not enough life-vests in the vessel for everyone on board, and that he was traveling without any lights or navigational equipment to assist in the direction of travel.

16.    CORNEJO stated that he was en-route to an area near National City, California, where he was going to wait for a vehicle to flash its lights guiding him towards the exchange point. CORNEJO did not know how the aliens were going to be taken to land, but suggested that the Alien Smuggling Organization (ASO) might use a "Dingy" to get them to land. CORNEJO admitted he was going to earn approximately $5,000 U.S. for delivering the aliens to the pre-determined location, but said he would not get paid until he got back to the Salinas Port in Rosarito, Mexico.

17.     During the post-Miranda interview, CORNEJO was questioned regarding the GPS and both cellular phones, (1) a Black Motorola Boost cellular phone- Model No.: H81XAH6RR1AN, FCC No.: AZ489FT5822, and Serial No: 364YEC6YTX; and (2) a Blue Motorola C-116 phone - Model No.: C-116 (G8/1.9), FCC No.: IHDT56EX1, and IMEI No: 010725007267164; and (3) a GARMIN GPS 76CS Model No.: 76CS, ID No: 74149430. CORNEJO stated that prior to leaving the boat docks in Rosarito, Mexico, he used the cellular phones to communicate with the registered owner of the boat, Robert Edward TORRES. CORNEJO further stated that the he was capable of navigating the vessel in the dark, however he used the GPS device to assist him.

18.     CORNEJO was arrested for violating Title 8 United States Code, Section 1324 (a) (2) (B) (ii), knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

19.     Based upon my training, experience, and investigation in this case, as well as discussions with other Special Agents involved with the investigations of this case, I believe that CORNEJO and others as yet known and unknown, have been involved in an ongoing conspiracy to smuggle undocumented aliens for financial gain into the San Diego, CA area. I also believe that CORNEJO and others have used cellular telephones and GPS devices to coordinate, direct, and further this conspiracy during their travels into and out of the United States, and during their residence and travels within the United States, have in fact used cellular telephones and GPS devices to facilitate the smuggling of undocumented aliens into the United States for financial gain.

20.    I believe that grounds for the issuance of a search warrant exist to search the

stored memory, active digital display, and all other electronic features of the GPS device

and cellular telephones described in paragraph 7. Based upon my experience and training,

consultation with other agents conducting narcotics and alien smuggling investigations,

and the facts set forth herein, I believe that the items to be seized set forth in paragraph 7

are likely to be found in the GPS device and cellular telephones described in the same

paragraph.

Thao V Luc, Special Agent
U.S. Immigration and Customs Enforcement
Department of Homeland Security

Subscribed c Sworn

APR 0 3 2008

ANTHONY J. BATTAGLIA
U.S. MAGISTRATE JUDGE

ATTACHMENT "A"

1) A Black Motorola Boost cellular phone- Model No.: H81XAH6RR1AN, FCC

   No.: AZ489FT5822, and Serial No: 364YEC6YTX

2) A Blue Motorola C-116 phone- Model No.:  C-116 (G8/1.9),

   FCC No.: IHDT56EX1, and IMEI No: 010725007267164

3) A GARMIN GPS 76CS Model No.: 76CS, ID No: 74149430

These telephones and GPS are currently in the possession of U.S. ICE, 185 West F Street,

Suite 600, San Diego, California.

ATTACHMENT "B"

Electronically stored information found subsequent to the search of the property

described in ATTACHMENT "A", including telephone numbers of incoming and

outgoing calls stored in the call registry, telephone numbers and corresponding names to

those numbers in the cellular phones contacts list and other names found within the

contacts list, any incoming or outgoing text messages, photographic images, voicemails,

and telephone subscriber information.  In addition to the telephonic information,

electronically stored information stored within the Global Positioning System (GPS)

device listed in ATTACHMENT "A", including coordinates, charts, waypoints, time and

date stamps, maps and subscriber information pertaining to the GARMIN GPS device.

